No. 47,712

RALPH J. SCHLATTER, GERALD J. DAILY, and BILLY J. HUNTER, *Appellees*, v. BETTY IBARRA, *Appellant.*

(542 P. 2d 710)

68

Opinion filed November 8, 1975.

*Frank M. Lewis,* of Overland Park, argued the cause and was on the brief for the appellant.

*Jerome V. Bales,* of Wallace, Saunders, Austin, Allen, Brown & Enochs, of Overland Park, argued the cause, and *Larry Austin,* of the same firm, was with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal from an order of the trial court reforming a lease-contract (with option to purchase) after a finding of mutual mistake between the contracting parties.

Betty Ibarra (defendant-appellant) is the longtime owner of a Mexican food restaurant in Kansas City. Ralph Schlatter (plaintiff-appellee) is her insurance agent. He and the other plaintiffs-appellees are business partners in the ownership of the land and a 30 by 40 foot building located at 9129 Elmhurst in Overland Park, Kansas.

This land consists of four lots in the Elmhurst Addition. When the Elmhurst Addition was originally platted, the dimensions of these lots totaled 100 feet east to west and 125 feet north to south. In 1962 the then owner sold the south fifteen feet of these four lots leaving the dimensions of the lots 100 feet east to west and 110 feet north to south. In 1967 the then owner sold these now reduced lots totaling 100 feet east to west and 110 feet north to south to the three partners, plaintiffs-appellees. The three partners never owned the whole 100 by 125 foot area.

In October 1972, Mr. Schlatter, the partner primarily involved

in this dispute, was at Mrs. Ibarra's restaurant at its former location, 7926 Floyd. There he learned she wanted to leave her location on Floyd Street due to the condition of the building, a lack of parking, and a future rent increase. Mr. Schlatter mentioned he had some land at different locations. Mrs. Ibarra visited the land at 9129 Elmhurst and walked around, but did not measure the land. Mrs. Ibarra undertook preliminary negotiations with various contractors and a bank to ascertain costs with a view towards obtaining a loan and renovating the building as her new restaurant location.

After negotiations with the bank and various contractors, on November 8, 1972, the appellant and the appellees executed a five year lease with an option to purchase the Elmhurst property at the termination of the lease for $55,000. A legal description previously given to the appellees by a title insurance company invoice described the land as "Part of Lot 11, Lot 12, 13, 14, Block 16, Elmhurst." Mr. Schlatter, who prepared the lease, testified he wanted to use this description in the lease. However, in typing the lease Mr. Schlatter's secretary omitted the words "Part of." Thus an erroneous description describing whole lots was used in the lease.

In January 1973, after the appellant had begun remodeling, the mistake was discovered. On April 19, 1973, the appellees filed suit to reform the lease. The appellant answered and counterclaimed for damages.

The primary dispute involves the size of the lots conveyed. Each appellee testified he told the appellant the lots were 100 by 110 feet. The appellant disputes this. Clyde Long, an asphalt and concrete contractor, testified over objection that Gus Ibarra, the appellant's son, obtained an estimate for asphalting an area which Gus Ibarra on three different occasions said was 100 by 110 feet. Bob Barnes, a banker, testified over objection the loan application listed the lots as 100 by 110 feet. He had some question in his mind where he got these dimensions. He testified it was possible he got the dimensions from Mr. Schlatter, but felt it was more probable that Mrs. Ibarra gave him the dimensions. There was also conflicting testimony concerning representations about parking capacity, non-conforming use and future expansion of the property.

The trial court found:

". . . [T]hat the plaintiffs did not at any time prior to defendant executing the lease, warrant to her that the property contained any certain amount of footage; that plantiffs showed defendant said property and, in fact, showed her the boundaries for said property; that the plaintiffs did not at any

time make any misrepresentations to the defendant; that the parties entered into said lease agreement as a result of a mutual mistake of the parties in that the plaintiffs only intended to enter into a lease with option to purchase on the ground which they owned at said time and that the defendant only intended to lease and have an option to purchase that property that the plaintiffs owned at the time the lease was executed by the parties."

Finding a mutual mistake, the trial court entered an order changing the legal description in the lease from "Lots 11, 12, 13, and 14, Block 16 . . ." to "The North 110 feet of Lots 11, 12, 13 and 14 of Block 16. . . ."

An equitable principle of law was recognized early in the history of Kansas that a deed could be reformed to conform to the original intention of all parties to the instrument, where a mutual mistake was made in describing the property and the instrument did not convey the property intended.

The general rule is that where property has been included by mistake in a deed which the parties never intended should be conveyed, which the grantor was under no legal or moral obligation to convey, and which the grantee in good conscience has no right to retain, a court of equity will interfere and correct the mistake.

The foregoing equitable principle, however, has its limitations. To justify the reformation of a deed the party seeking reformation is required to clearly show a mutual mistake, and that he would be prejudiced by a failure to reform the deed. Furthermore, in all cases where a party seeks the reformation of a deed, the party asking for the relief must stand upon some equity superior to that of the party against whom he asserts it. (*Beams v. Werth*, 200 Kan. 532, 543, 438 P. 2d 957 and cases cited therein.)

Seven of the twelve points asserted by the appellant on appeal attack the trial court's findings on the ground they are not supported by substantial evidence or they are contrary to the evidence. It would serve no purpose to treat each of these points individually and review the evidence which supports the trial court's findings. We have carefully reviewed the record and find substantial evidence to support each and every finding made by the trial court. The evidence was conflicting on the crucial issues, and the appellant attempts to assert only the evidence favorable to her when she argues the findings are contrary to the evidence.

The appellant contends it was error to permit the appellees to introduce hearsay testimony with respect to the appellant's son, Gus Ibarra.

Clyde Long, the paving contractor was consulted during preliminary negotiations before the appellant purchased the property in question. The substance of Clyde Long's testimony was that on at least three occasions Gus Ibarra had described the size of the property in question as 100 by 110 feet to him. A general objection was made by counsel for the appellant when Clyde Long was asked what dimensions the son gave him. The trial court overruled the objection, but at no time did counsel for the appellant specify the basis for his objection.

Under K. S. A. 60-404 a verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection. (*State v. Estes,* 216 Kan. 382, 385, 532 P. 2d 1283.)

The reason behind the contemporaneous objection rule was thoroughly discussed in *Baker v. State,* 204 Kan. 607, 464 P. 2d 212:

"The contemporaneous objection rule long adhered to in this state requires timely and specific objection to the admission of evidence in order for the question of admissibility to be considered on appeal. (K. S. A. 60-404.) The rule is a salutary procedural tool serving a legitimate state purpose. (See, *Mize v. State,* 199 Kan. 666, 433 P. 2d 397; *State v. Freeman,* 195 Kan. 561, 408 P. 2d 612, cert. denied, 384 U. S. 1025, 16 L. Ed. 2d 1030, 86 S. Ct. 1981.) By making use of the rule, counsel gives the trial court the opportunity to conduct the trial without using the tainted evidence, and thus avoid possible reversal and a new trial. Furthermore, the rule is practically one of necessity if litigation is ever to be brought to an end." (p. 611.)

Another recent authority on the point is *State v. Shepherd,* 213 Kan. 498, 509, 516 P. 2d 945.

Assuming that a proper objection had been made to the testimony of Clyde Long regarding statements made to him by Gus Ibarra, the testimony was properly admitted for another reason. The witness, Clyde Long, was an asphalt and paving contractor. He was approached by the appellant's son and asked to give an estimate on the cost of paving the parking lot on the property which was the subject of the lease between the appellant and appellees. The alleged hearsay evidence arose when the contractor testified as to the dimensions of the property given to him by the appellant's son. Although generally an out-of-court statement by a third party is hearsay and therefore inadmissible, an exception to this rule is a vicarious admission by a party.

K. S. A. 60-460 (*i*) provides:

"As against a party, a statement which would be admissible if made by the declarant at the hearing if (1) the statement concerned a matter within the scope of an agency or employment of the declarant for the party and was made before the termination of such relationship. . . ."

(See also, K. S. A. 60-460 [h] [1].)

The rule is discussed in 29 Am. Jur. 2d, Evidence, § 662, pp. 712, 713, 714 as follows:

"It is a general rule of agency that the statements of an agent made within the scope of his employment and with the actual or apparent authority of the principal are binding upon the latter. This principle of the law of agency, though substantive in nature, operates in the law of evidence in many instances to render a statement made by one person admissible in evidence as an admission binding upon another person who is a party to an action. Whatever is said by an agent to a third person, during the course of his duties and within the scope of his authority, relative to business contemplated by the agency in which he is then engaged is in legal intendment said by his principal and is admissible in evidence against such principal, even though the principal did not have knowledge of such statement. . . . The agent is regarded as the alter ego of the principal in making a statement which binds the latter. . . ."

*State v. Nirschl,* 208 Kan. 111, 490 P. 2d 917, discussed the vicarious admission rule, but holds there must be evidence in the record extrinsic to the out-of-court declaration to establish some substantial factual basis that an agency or employment existed before hearsay evidence may be admitted as an exception to the hearsay rule.

In the case at bar, the *Nirschl* requirement is satisfied. The appellant's son, Gus Ibarra, who was in the State of Florida at the time of trial, contacted Clyde Long before the appellant signed the contract in question and arranged for an estimate of the cost to pave the parking lot with asphalt. This and other evidence that Gus Ibarra went with his mother to look at the lots with appellee Schlatter indicates he was acting as an agent for the appellant in conducting this business transaction on her behalf. Therefore, the statement made by Gus Ibarra giving the dimensions of the property is admissible as a vicarious admission of the principal, Betty Ibarra, who is a party to this action.

The appellant contends it was error for the trial court to permit the appellees' witness, Bob F. Barnes, to speculate where he got the dimensions of 100 by 110 feet appearing in the Valley View State Bank loan request.

Mr. Barnes was the official of the bank handling the appellant's

request. He prepared the loan request which later secured the funds for the appellant's remodeling costs. The loan request carried lot dimensions of 100 by 110 feet. The testimony in question on this point is as follows:

"Q. MR. AUSTIN: Well, let's do this. In this particular case the dimensions had to either come from the loan exhibit, Mrs. Ibarra, or from Daily, Hunter or Mr. Schlatter, didn't they?

"THE WITNESS: Yes.

"Q. (By Mr. Austin) All right. Now give me a percent on that.

"MR. LEWIS: Objection because this is speculation. I think he can ask some specific questions with regard to what happened.

"Q. (By Mr. Austin) Isn't there better than a sixty percent chance that Mrs. Ibarra gave you the dimensions?

"A. Yes.

"MR. LEWIS: Okay.

"Q. (By Mr. Austin) That's correct, isn't it, sir?

"A. Yes."

Although a specific objection was made to this evidence, it is clear from the record the court was never called upon to rule on the objection. Even though a proper objection has been made, the party must insist that the trial court make a ruling thereon or the objection is waived. (*State v. Childs,* 198 Kan. 4, 11, 422 P. 2d 898.) It must also be noted that when the question was repeated and an affirmative answer given by the witness, counsel for the appellant said, "Okay." Under these circumstances, it must be said, the appellant affirmatively withdrew and waived the objection. (See, 75 Am. Jur. 2d, Trial, § 173.)

A subsequent objection to the same kind of testimony elicited by the appellees on redirect examination was overruled by the trial court.

The testimony of Mr. Barnes on redirect examination was:

"Q. Isn't it more probable that Betty Ibarra gave you the dimension of a hundred and a hundred and ten, than Mr. Schlatter?

"A. Yes.

"MR. LEWIS: Object to the question. I think it's asking for a conclusion, and speculation.

\* \* \* \* \*

"THE COURT: Overruled."

Since the same evidence had already been admitted on direct examination by the consent of the appellant and without a ruling by the court, a later objection would be of no avail except to reduce the prejudicial impact of the original testimony. If cross-examination revealed that Mr. Barnes was in fact speculating, counsel for the

appellant could have requested the court to strike his testimony on this point, but there is nothing in the record that this occurred.

The substance of all of Mr. Barnes' testimony was that although he was a little vague in his mind about the transaction, the bank usually obtained the legal descriptions from the applicants on loan applications, and he felt it was more probable than not that he got the dimensions from Betty Ibarra as opposed to Mr. Schlatter.

A witness may testify as to what is more probable than not absent any showing of speculation. (See, *Nunez v. Wilson*, 211 Kan. 443, 444-448, 507 P. 2d 329; *Roark v. Greeno*, 61 Kan. 299, 304, 59 Pac. 655; and K. S. A. 60-456 [*a*] and K. S. A. 60-456 [*b*].) In 30 Am. Jur. 2d, Evidence, § 1081, p. 228, it states:

"The fact that a witness is uncertain as to either the observation or the recollection of a fact concerning which he is asked to testify, and gives his testimony qualified by a phrase or phrases expressive of something less than a positive degree of assurance, such as 'I think' or 'I believe,' does not affect the admissibility of his evidence, although in many cases it is said that the probative force thereof may be affected by the qualification expressed by the witness, and that it is for the jury to weigh the evidence as given. A witness is not required to speak with such confidence as to show that there are no doubts in his mind; the fact that he qualifies his testimony affects only its probative force, especially where there is other testimony which tends to corroborate the fact."

The appellant argues the appellee Schlatter acted as his own attorney in preparing the lease and "blundered" to such an extent that he should have been found guilty of gross negligence. The appellant cites *Bailey v. Talbert*, 179 Kan. 169, 294 P. 2d 220, for the proposition that every party to a contract has the duty to learn and know the contents thereof before signing, and that the statement "I cannot do it" never relieves the promisor. The appellant also cites Corpus Juris Secundum for the rule that one who signs an instrument without reading it is guilty of gross negligence, and *Brungardt v. Smith*, 178 Kan. 629, 290 P. 2d 1039, for the proposition that where the deed is unambiguous and there is no claim of fraud or its equivalent leading up to its execution, evidence offered by the grantor is not admissible if he prepared the deed.

*Bailey v. Talbert*, supra, must be distinguished because the record there disclosed there was no evidence showing mistake, lack of understanding or knowledge on the part of the appellee as to the provisions of the contract. The case stands for the proposition that parties should be bound by the strict terminology of a contract unless such terminology is ambiguous, *or unless there was a mistake*

*involved.* The rule in such cases as *Bailey v. Talbert,* supra; *Commercial Credit Corporation v. Harris,* 212 Kan. 310, 314, 510 P. 2d 1322; and *Sutherland v. Sutherland,* 187 Kan. 599, 610, 358 P. 2d 776, should not be applied to *mutual mistake* cases.

As to the appellant's contention that the appellees should be held to the contents of the lease since they did not read the same, it should first be pointed out that there is no evidence in the record to indicate that the appellees did not read the lease prior to signing. However, it must be admitted both the appellant and the appellees failed to notice the incorrect legal description when they signed the lease. Assuming the appellees had not read the contract, that fact is irrelevant to the issues at bar. A mutual mistake in an instrument may be shown although the parties thereto did not, before signing it, carefully examine the instrument to ascertain whether it expressed their agreement. (*Home Owners' Loan Corp. v. Oakson,* 161 Kan. 755, 173 P. 2d 257; and *Zuspann v. Roy,* 102 Kan. 188, 170 Pac. 387.)

The rule applicable to the case at bar may be traced back to *Claypoole v. Houston,* 12 Kan. 324, where the court, without comment, announced the following rule:

"The district court has jurisdiction to correct and reform an administrator's deed, which, through a mutual mistake of all the parties, was made to read 'seventy degrees and thirty-nine minutes,' when it was intended and should have read 'seven degrees and thirty-nine minutes,' so as to make said deed conform to the intention, agreement and understanding of all the parties." (Syl. ¶ 1.)

Negligence is discussed, where reformation of an instrument is sought on the ground of mutual mistake, in 66 Am. Jur. 2d, Reformation of Instruments, § 79, pp. 601, 602, as follows:

"It has often been said that mere negligence in executing or accepting a written instrument is not a bar to reformation where the ground for relief is mutual mistake. Mistakes nearly always presuppose negligence, and so it must be evident that the rule which permits reformation on the ground of mutual mistake does not contemplate that mere negligence will bar reformation. Accordingly, it is not necessary that one who seeks reformation be entirely free from fault, and this is especially true where a confidential relationship exists between the contracting parties. It is similarly held that if both parties are equally at fault, the negligence of the complaining party is not a defense to reformation.

"The Restatement, Contracts § 508, states: 'The negligent failure of a party to know or to discover the facts, as to which both parties are under a mistake does not preclude rescission or reformation on account thereof.' . . ."

In view of the foregoing the appellant's contention that all of the

evidence introduced by the appellees was inadmissible, is wholly without merit.

The appellant cites no authority for the proposition that the appellees should be barred from recovery because the appellee Schlatter was grossly negligent. The facts simply were that in preparing the lease, the appellee Schlatter first took a copy of an existing lease he had on another piece of property, and then using the same form, inserted what he thought was the legal description on the invoice from Investor's Title Insurance Corporation. The legal description on the invoice used the words "Part of" Lot 11, 12, etc. Although it was not the full legal description, it was accurate as a shortened version of the full legal description in metes and bounds.

The appellee Schlatter testified he did not know the full legal description of the property, but he knew the property was at 9129 Elmhurst, and that its size was 100 by 110 feet. When his secretary failed to include the words "Part of" in the lease itself, a mistake was made. From the evidence the trial court found the mistake was mutual in nature since the lease did not express the intent of either of the parties.

A mistake in the legal description of an instrument presupposes that someone erred in drawing up the document. Dwelling on the nature of this error begs the question as to whether or not the document accurately expressed the intention of the parties, i. e., whether they made a mutual mistake. To denominate the error in the legal description as gross negligence in this case and bar reformation would be tantamount to the elimination of the equitable remedy of reformation entirely.

The appellant contends even though there is in fact a mutual mistake leading into the execution of the lease, the trial court erred in granting reformation in view of the appellees' total failure to establish fraud, undue influence or a superior equity position over the appellant. Without at least one of these the appellant contends the appellees are not entitled to a judgment of reformation.

In *Conaway v. Gore*, 21 Kan. 725, cited in *Beams v. Werth*, supra, the court said:

"The reformation of deeds is one of the most familiar doctrines pertaining to equity jurisprudence; but in all cases of relief of this character the party asking it must stand upon some equity superior to that of the party against whom he asks redress. If the equities are equal, a court of equity is silent

and passive. If the party asking equity fails to do equity, he must be dismissed without relief. . . ." (p. 727.)

While the trial court in the instant case did not make a finding using the exact words "superior equity position", the trial court reached the same result without using these words. When the trial court found the lease described premises which included land not actually owned by the appellees, it was saying that the appellees are in a greater position of equity since they obviously cannot convey the same. When the court found the appellees showed the appellant the property and the boundaries and did not make any misrepresentations to the appellant, the court was saying the appellees are in a definite position of superior equity. When the court found the parties had made a mutual mistake and the lease described property beyond what was the true intent of the parties, the court was finding the appellees should be given equitable relief.

Therefore, taking the findings of fact and conclusions of law as a whole, and in view of the fact the court set forth the prerequisite of a superior equity position in its conclusions of law, it can only be said the trial court found the equities were not equal and the parties asking for equity, the appellees, were entitled to relief.

The appellant's remaining contention is that after the trial court found there were no ambiguities in the contract it erred in ordering a new contract to be created between the parties. This point is redundant and has heretofore been considered in discussing the appellant's points. The fact that a contract is unambiguous is completely irrelevant to the remedy of reformation. In *Snider v. Marple,* 168 Kan. 459, 213 P. 2d 984, the court said:

". . . The very purpose of an action for reformation is to have an instrument altered to make it state the true agreements of the parties to it, and the fact the instrument sought to be reformed is couched in clear and unambiguous language does not preclude inquiry as to whether it expressed the agreement. . . ." (p. 466.)

The judgment of the lower court is affirmed.

MILLER, J., not participating.