(598 P.2d 1075)

No. 50,162

In the Interest of Travis and Timothy Collins, minor children

Opinion filed August 24, 1979.

*J. McFadden,* of Leavenworth, for appellant.

*Robert D. Beall,* of Leavenworth, for appellee Department of Social and Rehabilitation Services.

Before Spencer, P.J., Swinehart and Meyer, JJ.

Meyer, J.: This case involves an appeal from a juvenile court determination to the effect that Travis and Timothy Collins, minor children, were dependent and neglected. The court placed their temporary custody with the appellee, Joyce E. Collins (aunt). The appellant, Velma Collins (grandmother), was not a party in the court below.

The first issue raised by appellant is that the juvenile court erred in receiving and considering hearsay evidence in the form of reports by social workers and documents received in the course of a Social and Rehabilitation Services evaluation.

Hearsay evidence is not admissible in proceedings under the juvenile code. "Hearsay evidence is not admissible in the adjudicatory stage of a proceeding to terminate parental rights." *In re Johnson,* 214 Kan. 780, Syl. ¶ 1, 522 P.2d 330 (1974). This rule in regard to termination of parental rights was extended in *In re Harris,* 218 Kan. 625, 544 P.2d 1403 (1976), to apply to all proceedings in juvenile court.

One of the complained of reports was that of an SRS worker, Patty Schmidt. Her report, which consisted of her own conclu-

sions and perceptions, was admissible, however, under the exception noted in K.S.A. 60-460(*a*) below, because she appeared and testified.

"A statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness."

As to the other reports, following *In re Harris,* 218 Kan. 625, we hold that these, since they were of persons not appearing in court, are normally inadmissible because of the hearsay rule.

Since such hearsay evidence reports were not objected to in the trial court, the question arises as to whether or not they are barred by the contemporaneous objection rule.

"[A] verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection." *Schlatter v. Ibarra,* 218 Kan. 67, 71, 542 P.2d 710 (1975); see also K.S.A. 60-404.

The grandmother is granted a right to appeal by K.S.A. 1977 Supp. 38-834. She states that the contemporaneous objection rule does not apply to her since she was excluded by the trial court from the hearing other than for the purpose of giving testimony, and that therefore she comes within the exception stated at K.S.A. 60-246, which in pertinent part provides that:

"[I]f a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice the party."

While, as we have noted, a relative is granted a right to appeal by K.S.A. 1977 Supp. 38-834, it does not necessarily follow that this right to appeal automatically implies a right to raise a question of evidence despite the contemporaneous objection rule (K.S.A. 60-246 notwithstanding) where, as here, not only were the children represented by an attorney, but the father, whose interests were aligned with the grandmother, was also represented by an attorney. It is important to note that the appeal rights granted by K.S.A. 1977 Supp. 38-834 are not such as to give the relative a right to appeal in his or her own right, but rather are rights granted to the relative to appeal *on the part of* the minors, and the attorney for the minors in the juvenile court gave no indication that the evidence now complained of should have been excluded or not taken into consideration by the trial court. He merely expressed his disagreement with the conclusion of the report.

Furthermore, on the basis of other testimony (the competency of which is not questioned), it could be found that there was substantial and sufficient evidence to support the finding of dependency and neglect.

We turn now to the grandmother's contention that the aunt was not a proper person to whom custody can be given under K.S.A. 1977 Supp. 38-824(*b*).

K.S.A. 1977 Supp. 38-824(*b*) provides that:

"In the absence of an order depriving parental rights, the district court may make such dependent and neglected child a ward of the court and commit the child to:
(1) The custody of either or both of the child's parents;
(2) the care, custody and control of a juvenile probation officer duly appointed by the court or other individual;
(3) the care of some children's aid society; or
(4) the secretary of social and rehabilitation services."

The grandmother asserts that the aunt is not a proper person to receive custody of the children due to the fact that she is not specified in any of the categories above. She argues that the words "or other individual" found in 1977 Supp. 38-824(*b*)(2) refer to a person authorized to appoint, not one to whom custody may be granted. We do not agree. Where under the provisions of the statute the child is made a ward of the court, only the court has power to commit the child to the care, custody and control of any individual or entity. Therefore, it follows that the words "or other individual" must refer to whom the child can be committed.

K.S.A. 1977 Supp. 38-801 provides in part:

"This act shall be liberally construed, to the end that each child coming within its provisions shall receive such care, custody, guidance, control and discipline, preferably in the child's own home, as will best serve the child's welfare and the best interests of the state."

Such a construction, giving the court power to commit a child to an individual might, in many cases, better meet the child's needs than would a construction which would restrict the power of the judge to commit a child to the SRS, to a children's aid society, or to the parents.

Even though the father had not been found to be an unfit person in this action, there is a great deal of testimony by which the juvenile court could make a finding, based on substantial and sufficient evidence, that the children would not be as well cared

for in the father's home as in that of others. The evidence showed that the aunt had built a rapport with the children and had given them a loving home during the time in which she had custody. The juvenile court, therefore, not only had the evidence concerning the laxities of the father, but also had before it the evidence concerning the aunt's better abilities regarding care of the children.

Affirmed.