Hutto v. Knowlton.

---

DAISY HUTTO, *Appellee,* v. EMILY IRENE KNOWLTON, *Appellant,* and A. W. ELLIS *et al., Appellees.*

No. 16,514.

SYLLABUS BY THE COURT.

LIMITATION OF ACTIONS—*Fraud—Notice—Public Records.* The rule that, if an examination of the public records would reveal a fraud, the records themselves furnish sufficient constructive notice of the fraud to set the statute of limitations in motion does not obtain in favor of a vendee of real estate who procured his conveyance by means of false and fraudulent representations respecting the state of the record, upon which the vendor innocently relied.

Appeal from Pratt district court; PRESTON B. GILLETT, judge. Opinion filed May 7, 1910. Reversed.

*George L. Hay,* for the appellant.

*William Barrett,* and *R. F. Crick,* for the appellees.

The opinion of the court was delivered by

BURCH, J.: The appellant, a resident of the state of Illinois, was made a defendant in an action to quiet title, and answered praying that a conveyance she had made of the land in controversy be set aside because induced by false and fraudulent representations. A demurrer was sustained to the answer, which stated a cause of action unless relief were barred by the statute of limitations. The portions of the answer now material read as follow:

"That during the month of January, 1903, the said A. W. Ellis, for the purpose of deceiving and defrauding this defendant, represented to this defendant that a tax deed had been issued upon the above-described land, and that he, the said A. W. Ellis, was acting for and representing the said tax deed holder; that the said tax deed holder had been in the possession of said lands under said tax deed for more than five years, and that said tax deed and the possession of said lands under said tax deed for a period of five years and more gave to such tax deed holder a good and incontestable title to said lands, and that by reason thereof this defendant was fully, completely and forever barred from any and all interest that she may have had or claimed in and to said lands; that said tax deed holder to said lands desired to perfect his 'chain of title' to said lands by procuring a quitclaim deed from this defendant, and that if this defendant would execute a quitclaim deed he would pay her the sum of $25, but that if she failed and refused to give such quitclaim deed said tax deed holder could easily and would positively institute legal proceedings against this defendant and thereby perfect his title; that the said A. W. Ellis, in furtherance of said plan, scheme and conspiracy of said A. W. Ellis and A. S. Fay to deceive and defraud this defendant, sent this answering defendant a deed for said lands, already prepared for execution, to be signed by this defendant, conveying her interest in and to said lands to one O. H. Bock, of Pratt, Kan., and directed her to execute said deed and then at once forward said deed

after execution to the National Bank of Pratt, Kansas, for delivery, and thereby did represent to this defendant that the said O. H. Bock was the holder of said tax deed; . . . that the said O. H. Bock had no interest in said transaction, and no interest in said lands, and no interest in the money that was remitted to this defendant for said quitclaim deed, more than to receive the record title to said lands under and by virtue of said quitclaim deed for the convenience and accommodation of the said A. W. Ellis and A. S. Fay.

"This defendant further alleges that the said O. H. Bock, on or about the 11th day of February, 1903, and since the execution and delivery of said quitclaim deed as aforesaid, transferred and conveyed without consideration all his interest in and to said lands to the said A. W. Ellis, and the said A. W. Ellis now holds the record title to said lands. . . . This defendant further alleges that in truth and in fact the said O. H. Bock is not now and never has been the holder of a tax deed upon said lands or any part thereof; that the said A. W. Ellis was not then and is not now and never has been representing or acting for said O. H. Bock with reference to any tax deed which may have been issued upon said lands; that the said A. W. Ellis is not now and never has been representing or acting for any tax deed holder upon said lands or any part thereof; that no tax deed holder was intending to institute legal proceedings against this defendant based upon a tax deed, and that no tax deed had been issued upon said lands that was incontestable, and that there was no tax deed upon said lands that fully, completely and forever barred this defendant from her interest in said lands, and that the said A. W. Ellis knew at the time the aforesaid statements and representations were made and the aforesaid acts were done and performed that he was not acting in any capacity whatever for any tax deed holder upon said lands, and that no tax deed holder was intending to institute legal proceedings against this defendant based upon a tax deed, and that said tax deed or any tax deed on said lands was not incontestable, and that the same did not fully, completely and forever bar this defendant from any or all interest in and to said lands."

The answer was filed in November, 1906, within two years after the actual discovery of the fraud, but al-

most four years after it was committed. The contention is that the public record afforded constructive notice of the fraud sufficient to start the statute, under the authority of *Black v. Black,* 64 Kan. 689. The second paragraph of the syllabus of that case enunciates the following principle of law:

"Where the means of discovery lie in public records required by law to be kept, which involve the very transaction in hand, and the interests of the parties to the litigation, the public records themselves are sufficient constructive notice of the fraud to set the statute in motion."

This doctrine has been approved and applied in the cases of *Lewis v. Duncan,* 66 Kan. 306, *Donaldson v. Jacobitz,* 67 Kan. 244, and *Rogers v. Richards,* 67 Kan. 706.

In *Black v. Black* the fraud imputed related to the management, settlement and distribution of the estate of a deceased person. The party charged was the administratrix. The law required her to make manifest her conduct by reports and accounts, which were published upon the probate court records for the express purpose of affording information to parties interested. She made this record, concealing nothing and making no independent representations, and the court held it gave constructive notice to everybody concerned of what was done. The rule itself was admirably expressed, but the foundation of it was not so definitely stated, and may be said to consist in this: Where a public record is required by law to be kept as a source of information respecting property rights and interests a duty rests upon anyone to whom the information is material to improve with diligence the opportunity of learning that which the record discloses. It follows that if the opportunity be neglected the interested person will be bound to the same extent as if he had in fact examined the record. But the rule is no broader than its basis, and if for any reason no obligation ex-

Hutto v. Knowlton.

ists to consult the record, or if the interested person be circumvented from taking advantage of his opportunity, the rule does not obtain.

There is no obligation resting upon a landlord to watch the records for tax deeds fraudulently taken out by his tenant. (*Duffitt v. Tuhan,* 28 Kan. 292; *St. Clair v. Craig,* 77 Kan. 394.) Where fiduciary relations exist requiring the disclosure of the true state of facts there, is no reason to anticipate unfaithfulness, and the obligation to search the records is relaxed. (*Hinze v. Hinze,* 76 Kan. 169; and see *Donaldson v. Jacobitz,* 67 Kan. 244.) Likewise, if a party be prevented by fraud from availing himself of the benefit of the record, or be led by such means to forego an investigation of the record, no one participating in the fraud can insist upon the enforcement of the duty to do so. We have here just such a case. The records were not accessible to the appellant, who lived in a distant state. Ellis undertook to impart the very information which, if his statements were true, the records would have furnished. The appellant had no reason to question his veracity, and the law did not oblige her to do so. She had the right to accept his representations as true, and to rely upon them as faithful disclosures of what she would discover from the records if she consulted them. (*Matlack v. Shaffer,* 51 Kan. 208; *Carpenter v. Wright,* 52 Kan. 221.) Since he presumed to report to her the state of the record at the time she made her deed, she was not then required to go to the record itself. After she parted with title she could have no occasion to consult the record. Therefore the merely constructive notice which it imparted was not sufficient, and the statute did not begin to run until the fraud was otherwise discovered.

The judgment of the district court is reversed and the cause is remanded, with direction to overrule the demurrer to the answer.