CRUDE OIL CO. v. CARTER OIL CO.
(GRISSO et al., third party defendants).
Civ. 5161.

United States District Court
W. D. Oklahoma.
March 28, 1952.

R. W. Fowler of Richardson, Shartel & Cochran, Oklahoma City, Okl., for plaintiff.

Leon Shipp, of Robinson, Shipp, Robertson & Barnes, Oklahoma City, Okl. (George Montgomery, Legal Dept., Carter Oil Co., and T. Murray Robinson, Oklahoma City, Okl., on the brief), for defendants.

VAUGHT, Chief Judge.

The plaintiff seeks to recover from the defendant, The Carter Oil Company, (hereinafter referred to as Carter) a ⅛ of

⅛ or a ¼₈ interest in oil and gas produced under an oil and gas lease executed June 19, 1924 on the West Half of the Northeast Quarter and the Southeast Quarter of the Southeast Quarter of Section 15, Township 9 North, Range 6 East, Seminole County, Oklahoma. The producing well involved, known as the Maggie Grisso, is located on the Southeast Quarter of the Southeast Quarter of said section. The lease provided: "If the leased premises shall hereafter be owned in severalty or in separate tracts, the premises, nevertheless, shall be developed and operated as one lease and all royalties accruing hereunder shall be treated as an entirety and shall be divided among and paid to such separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage. * * "

Plaintiff makes the following allegations in its complaint. W. E. Grisso was the owner in fee of the real estate covered by this lease. On July 8, 1924 the lessee assigned the lease to Carter. On April 11, 1925 Grisso executed and delivered to Felix L. Gast a mineral deed covering an undivided ¼ interest in the oil and gas and other minerals in and under said West Half of the Northeast Quarter of Section 15. This conveyance contained the following provision: "It is hereby expressly declared that whereas the land, particularly described in this conveyance is understood to be subject to an oil and gas mining lease in favor of Carter Oil Co. it is intended that said outstanding lease is fully embraced in the general terms of this conveyance, so as to pass to, and vest in said Felix L. Gast a ¼ interest not only in the oil and gas, but also all rents and royalties therein reserved to the lessor, precisely as if said Felix L. Gast had been at the date of making of said lease, the owner in fee of a ¼ interest in and to the lands described, and himself one of the lessors therein." Thereafter by proper conveyances plaintiff became the owner of said royalty interest, subject to the terms and provisions of the lease, which it is alleged is a ¼₈ interest in all the oil and gas produced on the lease. On September 15, 1927, pursuant to the terms of the lease, Carter completed a producing well on said Southeast Quarter of the Southeast Quarter of Section 15 and since that date has produced therefrom and sold large quantities of oil, and is still producing from said well substantial quantities of oil. Plaintiff did not know or learn until sometime in January, 1951, that Carter had drilled a well or obtained production under said lease upon any portion of the land covered thereby. Since March, 1928, Carter and Grisso have known that plaintiff owned an interest in the oil produced from the well and have deliberately and intentionally withheld from plaintiff any information concerning the same. Shortly after the completion of said well, Carter requested and received of Grisso an instrument signed by Grisso and J. A. Patterson, indemnifying Carter and agreeing to hold it harmless from all claims and demands that might be made against it by plaintiff or its assignors by reason of the foregoing facts alleged. In consideration of the indemnity agreement Carter has delivered to the credit of Grisso the full ⅛ of all the oil produced from said well. The acts of Carter and Grisso were done for the purpose and with the intent to deprive the plaintiff of its interest in said oil and constituted a fraud upon plaintiff and a fraudulent concealment from the plaintiff of the facts. Since discovery of the facts as alleged, the plaintiff has demanded that Carter account to it for the plaintiff's share of oil and gas produced from said well, or the proceeds thereof, but Carter has refused to do so. An accounting is demanded, together with all proper relief.

Upon motion of the defendant Grisso and Patterson were made third party defendants.

Carter filed its answer denying the allegations of fraud and pleading estoppel, the statute of limitations and laches, as set forth therein. The third party defendants filed their answer, in effect raising the same issues pleaded in the answer of Carter.

The facts surrounding the transaction aside from the allegations of fraud and estoppel are not in dispute. From the date of the completion of the well to the

884

date of the trial, 911,743.13 barrels of oil had been produced from the well and the value of the ⅛₈ interest claimed by plaintiff is $25,860.95. The value of the ⅛₈ interest claimed for gas produced is $174.-09, or a total of $26,035.04. It is conceded that the plaintiff is entitled to recover that amount, if any.

The questions to be determined are, whether the acts and conduct of the defendants constituted fraud; if so, whether the acts and conduct of the plaintiff constituted estoppel, and whether laches or the statute of limitations apply.

■ Were Carter and Grisso guilty of fraud? The record discloses that Grisso owned, and still owns, the tracts of land embraced in the lease. These tracts while in the same section were not contiguous, one being the West Half of the Northeast Quarter and the other the Southeast Quarter of the Southeast Quarter. Gast, the grantee in the mineral deed covering the West Half of the Northeast Quarter, testified that he was unacquainted with and had no actual notice of the provisions of the lease insofar as it affected the Southeast Quarter of the Southeast Quarter. It is true that the third party defendant Grisso alleged in his answer that Gast in oral conversation with him showed that he was conversant with that situation, but at the trial, although Grisso was present, he did not take the stand and testify to any such conversation. So it must be assumed that the testimony of Gast is true in that regard. Soon after Gast acquired his mineral deed from Grisso, a suit was filed by certain parties claiming to own an interest in the tract embraced in the mineral deed and other land. Grisso at once defended that litigation at his own expense and told Gast to pay no attention to it. There is no evidence that Gast knew what was transpiring during that litigation. At the request of Carter, Grisso then executed a bond of indemnity in order to receive the full ⅛ royalty under the lease. Soon thereafter Grisso was urged by Carter to contact Gast and his assignee and straighten up the matter concerning the ⅛₈ interest in the proceeds of the well in dispute here. Grisso was reluctant to do that and did not contact Gast or his assignee. Although in its letter of June 6, 1929, Carter acknowledged that its only motive was "to see to it that the money is paid to the persons owning it," it concluded to let the matter ride, and neither Grisso nor Carter sought to enlighten the plaintiff. The correspondence between Carter and Grisso is self-explanatory. Carter was urging Grisso to straighten out the matter with Gast and Grisso was insisting that his bond should satisfy Carter and that Carter should let the matter ride. With all the knowledge Carter and Grisso possessed, by their actions they tacitly agreed to conceal the true situation from plaintiff, and through the years Carter has continued to pay to Grisso the money which belonged to plaintiff in excess of $26,000. This was fraud and Carter is liable for the amount due. No authorities are necessary to support the conclusion where such testimony is undisputed. Carter was placed in the position of a trustee and was operating in a fiduciary capacity. In its letter of June 5, 1929 it recognized its position as such, and we quote:

"We have heretofore written to you with reference to the royalty situation on the Maggie Grisso farm. At the time we first brought this to your attention we advised you that while we would not insist the matter be adjusted immediately, we thought it should be within a reasonable time. It has been some several weeks since this transpired and we have not yet learned whether any steps have been taken to clarify the situation. We believe though that if it is not adjusted one way or the other shortly we should withhold sufficient of the runs to cover any amount that might be demanded of us by the royalty owners on the other tract. I think this amounts to something over $3,000.00 at this time. Thus far we have not withheld any money, anticipating that you would make some arrangement with the outstanding interests. Will you please let us know whether anything has been done in this direction.

"It has been suggested that you have given a bond to cover payment of these royalties to you, which is true, but if they in fact belong to other persons there is no

object in making payment to you and then accounting to such other persons."

And to the same effect is its letter of June 6, 1929, as follows: "In further answer to your letter please be advised that this Company does not insist that the royalty be paid to Gast and Hulett but merely suggest that the money be withheld here until its ownership is determined. Mr. W. E. Grisso will recall that we extended him the courtesy of advising him fully about this situation some time ago so that he could have an opportunity to thoroughly investigate it. The only motive which prompts us is to see to it that the money is paid to the persons owning it." The cases cited by plaintiff in its brief are squarely in point. We quote from Humble Oil & Refining Co. v. Campbell, 5 Cir., 69 F.2d 667, 671, certiorari denied 292 U.S. 648, 54 S.Ct. 860, 78 L.Ed. 1498, as follows: " * * * It goes without saying that, when Greene joined with Bunker in reaching into the trust property to despoil it of its oil runs, he committed a breach of trust, and that, when the Humble Company paid it to him, they knowingly connived at that breach. * * *"

■ Did the acts and conduct of plaintiff constitute estoppel? The theory of the defendants is that by virtue of the fact the plaintiff joined Grisso in executing leases on the property and accepting its share of bonus payments thereon subsequent to the completion of the Maggie Grisso Well, it is estopped. Grisso still owns the property. He has been conversant throughout all these transactions of the true status of the parties; he knew that such leases were of no force and effect; he was not misled. And neither was Carter misled to its prejudice by these transactions. There is no justification or merit in this defense.

According to the authorities, the plaintiff has not been guilty of laches, and the statute of limitations has not run in favor of the defendants. The following authorities cited by the plaintiff in its brief answer all the questions raised as to laches and the plea of the statute of limitations: Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743; Oldland v. Gray, 10 Cir., 179 F.2d 408, certiorari

denied 339 U.S. 948, 70 S.Ct. 803, 94 L.Ed. 1362; Ludey v. Pure Oil Co., 157 Okl. 1, 11 P.2d 102; Hoehn v. Crews, 10 Cir., 144 F.2d 665; Lawson v. Haynes, 10 Cir., 170 F.2d 741; Chisholm v. House, 10 Cir., 183 F.2d 698; Neary v. Markham, 10 Cir., 155 F.2d 485; Saulsbury Oil Co. v. Phillips Petroleum Co., 10 Cir., 142 F.2d 27, certiorari denied 323 U.S. 727, 65 S.Ct. 62, 89 L.Ed. 584, and Fleeger v. Ames, 10 Cir., 120 F.2d 803.

The defendants also contend that the recording of the lease originally given was constructive notice to plaintiff as to any rights he may have acquired by virtue of that instrument. That principle of law does not apply to the facts and circumstances of this case. The evidence discloses that the first actual notice the plaintiff had of the provisions of the lease which would entitle it to the ⅟₄₈ interest in the proceeds from the Maggie Grisso Well was in January, 1951, when it attempted to negotiate a lease on the property described in its mineral deed together with other property, and the intended purchaser informed it that the property was covered by the original lease. The evidence is undisputed that prior to that time, on different occasions, Grisso was instrumental in having the plaintiff join him in the execution of leases on the property to other parties, knowing that it was already under lease, and the defendants cannot now be heard to say that the plaintiff cannot recover here for the reason that he had constructive notice by virtue of the original lease with its provisions being a matter of record.

■ The rule is well expressed in Hutto v. Knowlton, 82 Kan. 445, 108 P. 825, a Kansas case quoted with approval by the Supreme Court of Oklahoma in Webb v. Logan, 48 Okl. 354, 150 P. 116, 117, as follows: "The Supreme Court of Kansas, in the case of Hutto v. Knowlton, 82 Kan. 445, 108 P. 825, explains the rule announced in Black v. Black, supra [64 Kan. 689, 68 P. 662], wherein it said:

" 'In Black v. Black the fraud imputed related to the management, settlement, and distribution of the estate of a deceased person. The party charged was the administratrix. The law required her to

make manifest her conduct by reports and accounts which were published upon the probate * * * records for the express purpose of affording information to parties interested. She made this record, concealing nothing and making no independent representations, and the court held it gave constructive notice to everybody concerned of what was done. The rule itself was admirably expressed, but the foundation of it was not so definitely stated, and may be said to consist in this: Where a public record is required by law to be kept as a source of information respecting property rights and interests, a duty rests upon any one to whom the information is material to improve with diligence the opportunity of learning that which the record discloses. It follows that, if the opportunity be neglected, the interested person will be bound to the same extent as if he had in fact examined the record. *But the rule is no broader than its basis, and if for any reason no obligation exists to consult the record, or if the interested person be circumvented from taking advantage of his opportunity, the rule does not obtain.'* (Emphasis supplied.)

The exception to the rule applies here. The defendants apparently knew that the plaintiff was not actually informed of its rights. The whole conduct of the defendants as shown by the record creates the inescapable conviction that the defendants actively concealed from the plaintiff the knowledge of those rights, thereby lulling the plaintiff from any activity to discover anything that the recorded instrument might disclose, and in the meantime depriving the plaintiff of the proceeds of the lease to which it was entitled.

The court is of the opinion that the plaintiff is entitled to recover the sum of $26,035.04 together with interest at six per cent per annum on the various component amounts set forth in the last column of plaintiff's exhibit 25, from the last day of the respective months set opposite such component amounts, and that the defendant Carter is entitled to a judgment over against the third party defendants Grisso and Patterson in the amount of the judgment against Carter in favor of the plaintiff.

Findings of fact, conclusions of law and a proper form of judgment consistent with this opinion may be submitted within ten days from this date.