IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 115,434

LCL, LLC,

v.

JAMES W. FALEN, in His Capacity as Sole Trustee of the James W. Falen Living Trust U/A, dated April 30, 2007; JULIE D. FALEN; GREGORY A. FALEN; and MARYL M. WESOLOWSKI, (Defendants/Third-Party Plaintiffs),
*Appellants,*

v.

RICE COUNTY ABSTRACT & TITLE CO., INC., (Third-Party Defendant),
*Appellee.*

SYLLABUS BY THE COURT

1.

Filing and recording of a deed omitting a seller's reservation of a mineral interest, at a minimum, clouds the seller's title and causes an immediate substantial, actionable injury.

2.

Whether a substantial injury is "reasonably ascertainable" under K.S.A. 60-513(b) is a question of fact, not resolvable as a matter of law under the constructive notice provision in K.S.A. 58-2222. The filing and recording of a deed is only one piece of relevant evidence to be considered by the fact-finder in deciding whether a substantial injury caused by the deed's omission of a seller's reserved mineral interest is "reasonably ascertainable."

1

Review of the judgment of the Court of Appeals in 53 Kan. App. 2d 651, 390 P.3d 571 (2017). Appeal from Rice District Court; STEVEN E. JOHNSON, judge. Opinion filed July 27, 2018. Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed and the case remanded for further proceedings.

*Gordon B. Stull*, of Stull, Beverlin, Nicolay & Haas, LLC, of Pratt, argued the cause, and *Joshua V.C. Nicolay*, was on the briefs for appellants.

*William P. Denning*, of Sanders Warren Russell & Scheer LLP, of Overland Park, argued the cause, and *Jeffrey C. Baker*, and *Kaitlin M. Marsh-Blake*, were with him on the briefs for appellee.

The opinion of the court was delivered by

BEIER, J.:  This appeal examines summary judgment granted to a title company on negligence and breach of fiduciary duty claims, which arose out of the company's 2008 omission of a reserved mineral interest in a deed and its handling of a 2014 conveyance. The district court judge ruled that the claims were launched too late.

A panel of our Court of Appeals reversed, and we granted the title company's petition for review. We now hold that summary judgment was granted in error, although our reasoning in support of that conclusion differs somewhat from that of the panel. We reverse the judgment in favor of the title company on the negligence and breach of fiduciary duty claims and remand the case to the district court for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

On its way to summary judgment in district court, third-party defendant Rice County Abstract & Title Co., Inc. (RCAT), set forth 22 paragraphs of what it asserted were uncontroverted facts. Defendants/third-party plaintiffs (the Falens), successors in interest to the Mary Louise Falen-Olsen Trust (the Trust), attempted to contest seven of

the paragraphs, and the district judge assumed the Falens' versions were true for purposes of ruling on the motion. See *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 622-23, 345 P.3d 281 (2015) (district court required to resolve all facts and inferences that may reasonably be drawn from the evidence in favor of nonmoving party). The Falens also listed 56 additional paragraphs of what they asserted were uncontroverted facts. Although RCAT, in turn, attempted to challenge certain of those 56 paragraphs, we have carefully reviewed all of the parties' pyrotechnic tit for tat, and we perceive no disputes on core facts necessary to resolution of this appeal, other than as specifically noted below.

The roots of this case can be traced to November 20, 2007, when the Trust entered into a contract to convey approximately 200 acres of Rice County land to Sammy Dean. The Trust had owned all of the surface rights and an undivided one-half mineral interest in the land. The contents of the listing agreement, an advertising brochure, and the eventual sale contract are consistent in reflecting the contemporaneous intention of the Trust and Dean that the Trust would sell the surface rights and retain the mineral interest.

RCAT was the closing agent and the title insurer on the sale. It charged half of its fee to Dean and the other half to the Trust. It did not include any reference to the mineral reservation in the deed it prepared, although it had a copy of the sale contract.

RCAT has asserted that it sent the deed to third-party plaintiffs Gregory A. Falen and Julie D. Falen, co-trustees of the Trust, for "review and signature," but Gregory and Julie have asserted that the deed was sent to them by RCAT only for signature. Neither Gregory nor Julie nor any other representative of the Trust asked RCAT about the mineral reservation before Gregory and Julie executed the deed. The deed was filed and recorded in Rice County on January 18, 2008.

3

After the Trust's sale of the land to Dean, the Trust transferred what all concerned believed was still its mineral interest to the Trust's beneficiaries. The beneficiaries, in turn, made several additional transfers of the interest among themselves, executing and recording mineral deeds and quitclaims with the Rice County Register of Deeds. On March 6, 2008, Dean conveyed his interest in the property to SDM Properties2, LLC (SDM2), evidently an entity owned, at least in part, by Dean.

From January 2008 until August 2014, the Trust and then its successors in interest continued to be paid royalties for mineral production from the land sold to Dean. The Trust and then its successors in interest also continued to pay all property taxes associated with that production.

In April 2014, LCL, LLC, a company formed by Ron Laudick and Cheryl Armstrong, agreed to buy the property from SDM2. Before this conveyance was finalized, Laudick sent Dean an e-mail acknowledging "that the mineral rights do not go with the property."

RCAT again acted as the closing agent and title insurer for the 2014 transaction. Again, the deed prepared to record the conveyance did not note the Trust's 2008 mineral right reservation.

After the 2014 sale closed, Laudick contacted RCAT about the mineral rights on the property. He asked about the discrepancy between Dean's understanding of the ownership and RCAT's title commitment. RCAT conducted a title search and discovered that the 2008 deed had not included the reservation of the Trust's mineral interest. RCAT did not contact the Trust or its successors in interest, but it asked LCL to sign a corrected deed to remedy the omission. LCL refused. The Trust's successors in interest first learned of the brewing dispute in August 2014, when the company operating the oil and gas lease

4

on the property contacted Gregory about LCL's claim of ownership and the right to receive royalties. Royalty payments to the Trust's successors in interest were suspended by August 21, 2014.

LCL filed a petition to quiet title on the mineral interest on September 22, 2014. It named as defendants the Trust's successors in interest—Gregory; Julie; James W. Falen, in his capacity as sole trustee of the James W. Falen Living Trust U/A dated April 30, 2007; and Maryl M. Wesolowski. LCL asserted that its interest in the mineral rights was superior to the interest claimed by any defendant.

On December 1, 2014, the Falens filed an answer denying LCL's ownership of the mineral interest and a counterclaim to quiet title in their favor, based in part on the assertion that LCL did not qualify as a bona fide purchaser because it had actual notice that the mineral right was not included with the land. The same day, the Falens also filed a third-party petition against RCAT, alleging RCAT had been negligent and had breached an implied contract by failing to include the mineral reservation in the deed it prepared and recorded for the 2008 sale.

RCAT moved for summary judgment on the Falens' third-party claims. It argued that any injury to the Trust and the Falens occurred in January 2008 and thus the applicable two-year statute of limitations had expired. See K.S.A. 60-513(a)(4). Specifically, RCAT argued that the "the uncontroverted facts establish that the [Trust] knew or could have known of the error in the deed in January 2008" because Gregory and Julie had received the 2008 deed two days before they executed it and returned it to RCAT. In the alternative, RCAT argued that K.S.A. 58-2222 charged the Trust and its successors in interest with constructive notice of the contents of the 2008 deed as it was filed and recorded.

5

A few days later, the Falens moved to amend their third-party petition, seeking to add allegations regarding the 2014 sale and a claim for breach of fiduciary duty by RCAT. Although this motion was never ruled upon, the district judge thereafter treated the amended petition as the controlling pleading for the Falens' third-party claims.

In their response to the RCAT motion for summary judgment, the Falens argued that the "clear language of K.S.A. §60-513(b) indicates the limitation period is triggered by both the *act* which causes injury and the existence of substantial injury." They also argued that "'in a tort action where the evidence is in dispute as to when substantial injury first appears or becomes reasonably ascertainable, the issue is for determination by the trier of fact.'" They asserted that a genuine issue of material fact exists in this case on when their injury from RCAT's omission of the mineral reservation in the 2008 deed became reasonably ascertainable.

With respect to RCAT's argument that the Falens had constructive notice under K.S.A. 58-2222, the Falens cited *Luthi v. Evans*, 223 Kan. 622, 629, 576 P.2d 1064 (1978), for the proposition that the purpose of the recording statute is to "'impart to a subsequent purchaser notice of instruments which affect the title to a specific tract of land in which the subsequent purchaser is interested at the time.'" Because they did not qualify as subsequent purchasers, the Falens argued, they were not in the class of individuals whom the Legislature intended to charge with constructive notice under K.S.A. 58-2222.

The district judge bifurcated the quiet title action between LCL and the Falens from the Falens' third-party claims against RCAT. LCL and the Falens entered into a confidential settlement, and the judge dismissed the quiet title action on November 23, 2015.

6

RCAT's reply in support of its motion for summary judgment, filed in December 2015, repeated its actual and constructive notice claims, adding that any allegation that Gregory and Julie were inexperienced with reviewing deeds was irrelevant because the standard for whether the Falens' substantial injury was "reasonably ascertainable" is objective rather than subjective.

After a hearing, the district judge granted summary judgment to RCAT on all of the Falens' claims. His journal entry of judgment and memorandum opinion read in pertinent part:

"The Court having reviewed the pleadings filed by the parties, and after hearing the argument of counsel, finds that Third Party Defendant Rice County Abstract & Title Company Inc. is entitled to summary judgment on the basis that the statute of limitations bars all Third Party Plaintiff James Falen et al. claims against Third Party Defendant Rice County Abstract & Title Company, Inc."

"The Court wants to make clear it is not considering any of the merits of the causes of actions presented by the [Falens] in the Motion for Summary Judgment. This decision is based on the application of the appropriate statute of limitations only. . . .

". . . The [Falens] have alleged both [contract and tort causes of action], but certainly the statute of limitations for contract would have run. The factual statements are clear [that] the event giving rise to the cause of action for contract occurred no later than the filing of the defective deed on January 18, 2008. Suit in this matter was filed (through the Third Party Petition) on December 1, 2014. This would be a period of 6 years 317 days. . . .

"Certainly if this matter was a contract claim, the longest of possible statute of limitations would be 5 years on a written contract, though there have been no factual allegations made by the [Falens] that there ever was a written contract between the parties. An implied contract would have a statute of limitations of 3 years. See K.S.A. 60-

7

512 and K.S.A. 60-513. . . . Certainly, if the cause of action is for breach of contract that existed, the statute of limitations has run.

"The [Falens] have argued they have many causes of action in tort including breach of fiduciary duty, professional negligence, etc., but none carry any longer statute of limitations. Therefore, the longest of statute of limitations available to the [Falens] is that found for [tortious] conduct set out in K.S.A. 60-513 which provides that actions for injuries to the rights of another, not arising on contract, shall be brought within 2 years, subject to the proviso that the cause of action shall not be deemed to have [accrued] until the act giving rise to the cause of substantial injury is discovered, or is reasonably ascertainable, but no more than 10 years from the initial act. The [Falens] don't argue there is any longer statute of limitations available to them, they simply argue that their injury did not become reasonably ascertainable until 2014, when they received notice of a claim to oil runs they had received before and after the deed of 2008, well within the 2 year statute of limitations.

          . . . .

"At this point the Court needs to note the record and statement of uncontroverted facts provided by the [Falens] is overwhelmingly convincing that a factual issue has been accreted that they had no actual realization of the injury until this time. Without detailing each factual statement, it is clear the [Falens] have alleged they continued to receive oil runs, continued to pay taxes, and proceeded to deed the mineral interest they believe they had retained which would be consistent with their claim of the time of 'actual' discovery of the injury. The Court makes it clear the required decision that the Court believes it must make is not based on the actual discovery of the injury but on the strong case law indicating the statute of limitation begins to run when the injury 'becomes reasonably ascertainable' not the fact the [Falens] failed to do so.

"The [Falens] cited in their brief *Knight v. Myers* 12 Kan. App. 2d 469, at 474 (1988) the very clear understanding of Kansas law which provides:

8

'An injury is reasonably ascertainable when the plaintiff knew or could reasonably have expected to know of the alleged negligence.'

"[The Falens] also cite *Gilger v. Lee Const., Inc.,* 249 Kan. 307 at p. 311 (1991):

'In a tort action where the evidence is in dispute as to when substantial injury first appears or becomes reasonably ascertainable, the issue is for determination by the trier of fact.'

"Both of these cases are cited in *Bi-State Development Co., Inc. v. Shafer, Kline & Warren, Inc.,* 26 Kan. App. 2d 515, 990 P.2d 159 (1999)."

The district judge quoted *Bi-State* at length and concluded that its application of K.S.A. 58-2222 to bar a claim based on a recorded easement would drive his disposition of the negligence claim advanced by the Falens here.

In *Bi-State*, the June 10, 1986, recording of an inconsistent easement imparted "'notice to all persons of the contents thereof'" under the statute, and a Court of Appeals panel held that it made the plaintiff's injury "reasonably ascertainable." Although the plaintiff filed suit within two years of its discovery of the inconsistency, the claim came more than 10 years after the easement was recorded. 26 Kan. App. 2d at 519-20.

The district judge in this case continued:

"In the matter, there is no disputed fact that the act giving rise to the cause of action [occurred] no later than January 18, 2008 when the Deed in question was filed of public record. The question then becomes, under the facts as stated by the [Falens], is there a material fact in dispute that must be resolved to determine if the act giving rise to the cause of action was not reasonably ascertainable. The Court believes as a matter of law, as determined in the *Bi State* case above, that the injury was reasonably ascertainable

9

based upon the undisputed facts on January 18, 2008 simply by reviewing the deed placed of public record. Again, the decision of this Court is not based upon the actual awareness of the [Falens] that the minerals had not been reserved in the deed. It is based on the fact that as a matter of law, it would have been reasonably ascertainable by anyone who cared to take a look at the recorded deed that the minerals had not been reserved.

"The [Falens] argue they are not experts and should not be required to understand the deed conveyed the minerals as written. . . . While they may not have personally understood . . . , the *Bi State* case makes it clear:  'the statute charges notice to "all persons," not just experts.' It is certain from the facts viewed in the light most favorable to the [Falens] this deed was drawn appropriately to convey the minerals and is unambiguous as to that purpose, even if it shouldn't have. This deed conveyed notice to all when it was filed even if those reviewing it needed assistance from an expert to understand its meaning. If the [Falens] had asked an expert to view the records and interpret the deed for them, the expert would have told them so. It was reasonably ascertainable when it was filed that the injury occurred."

The district judge also granted judgment to RCAT on the breach of fiduciary duty claim, despite the Falens' argument that it arose out of RCAT's behavior in 2014 rather than or in addition to RCAT's behavior in 2008.

"The final argument made by the [Falens] is that they have a new cause of action that did not accrue until 2014, that is separate and apart from the 2008 alleged acts of negligence and therefor this new cause of action is well within the statute of limitations. Certainly if that is the case, the matter should proceed on the new cause of action only. However, if this new cause of action is nothing more than an extension or a continuing of the harm created in the original act, the statutes still commence when the harm, not the extent of it, was reasonably ascertainable. . . . . [T]his new cause of action is based on an alleged duty of RCAT as a fiduciary of the [Falens] to protect them and look out for their best interest far into the future, or at least up until the point that they issued a new title insurance policy on the next sale of the same real estate, all because they undertook the closing of their real estate sales contract and the drafting of the deed in 2008. Further,

10

RCAT owed a duty to the mineral deed holders whose mineral deeds were not in the chain of title as a result of the 2008 deed. That duty also relates back to the [Falens] pursuant to the fiduciary duty that they have alleged existed[,] all as a result of the undertaking to act in a professional capacity at the time of closing and the drawing of the ill-fated deed.

"This Court in this opinion is clearly not addressing whether such a cause of action can be maintained or whether such a fiduciary duty existed. For the purposes of this opinion this Court will draw the inference most favorable to the non-moving party and assume such a cause of action does exist. However, this Court must still address the application of the statute of limitations to it. It is this Court's opinion that such cause of action could arise solely out of the same act that occurred when the deed was prepared and filed in 2008. If that error did not occur, there would be no cause of action under this new theory of liability. The statute of limitations for a breach of fiduciary duty, professional or otherwise, and this new cause of action is the same[.] K.S.A. 60-513 . . . is not based on when the injury stops nor even on the last act of negligence alleged, but when the act first causes substantial injury or it is reasonably ascertainable. The alleged facts, undisputed facts for the purposes of this decision, even when viewed in the light most favorable to the [Falens], clearly indicate the first substantial injury was the loss of their mineral interest they intended to retain. That is an essential element of this new cause of action and the new cause of action would not exist without it. As state[d] previously, as a matter of law, this act was reasonably ascertainable when the deed was recorded in 2008.

. . . .

"This Court appreciates, under the alleged facts as drawn in the light most favorable to the nonmoving party, that the [Falens] were completely unaware of this until someone contested their right to receive oil runs in 2014. The alleged facts demonstrate an egregious wrong for which recourse should be available and would be if the statute of limitations had not run."

11

The Falens appealed only the summary judgment on their negligence and breach of fiduciary duty claims to the Court of Appeals. See *LCL, LLC, v. Falen*, 53 Kan. App. 2d 651, 652, 666, 390 P.3d 571 (2017).

The panel reversed RCAT's summary judgment on the negligence claim because, in its view, the Falens did not sustain damages, an essential element of a negligence cause of action, until August 2014, when they stopped receiving royalties under the oil and gas lease. Although the Falens suffered a legal or "paper" injury when RCAT recorded the 2008 deed without reserving the mineral right, the Falens had no cognizable monetary damages until the royalties stopped. 53 Kan. App. 2d at 660-61. The panel discounted the district judge's reliance on constructive notice. Such notice was immaterial because this was a case "where a negligent act causes a substantial injury that does not actually *occur* until sometime later." 53 Kan. App. 2d at 663-64.

On the Falens' claim that RCAT undertook a fiduciary duty in 2008 and breached or continued to breach it in 2014, the panel also reversed the summary judgment. Again, the panel concluded that the breach did not become actionable until the Falens stopped receiving royalty payments. 53 Kan. App. 2d at 666.

We granted RCAT's petition for review on what it styled as two issues: (1) When did the statute of limitations begin to run on the Falens' causes of action? and (2) Did K.S.A. 58-2222 impart constructive notice to the Falens? We take the liberty of examining these two questions after combining them into the only one that matters: Did the Court of Appeals err in reversing the district judge's summary judgment in favor of RCAT on the Falens' negligence and breach of fiduciary duty claims?

DISCUSSION

We take up the Falens' tort claims in the order they were advanced.

*Negligence*

The standard governing summary judgment is well established:

"'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' *Bank v. Parish,* 298 Kan. 755, Syl. ¶ 1, 317 P.3d 750 (2014)." *Drouhard-Nordhus*, 301 Kan. at 622.

Under K.S.A. 60-513(a)(4), an "action for injury to the rights of another, not arising on contract, and not herein enumerated," "shall be brought within two years." The Falens' negligence claim is governed by this two-year limitations period. See *Baska v. Scherzer*, 283 Kan. 750, 755, 156 P.3d 617 (2007).

The Falens' negligence claim

"shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the

13

fact of injury becomes reasonably ascertainable to the injured party." K.S.A. 60-513(b).

This court has defined "substantial injury" to mean "actionable injury."

"'The rule which has developed is:  The statute of limitations starts to run in a tort action at the time a negligent act causes injury if both the act and the resulting injury are reasonably ascertainable by the injured person. In *Hecht* [*v. First National Bank & Trust Co.,* 208 Kan. 84, 490 P.2d 649 (1971)], neither the negligent act nor the injury were ascertainable until a later date. . . . We hold the use of the term "substantial injury" in the statute does not require an injured party to have knowledge of the full extent of the injury to trigger the statute of limitations. Rather, it means the victim must have sufficient ascertainable injury to justify an action for recovery of the damages, regardless of extent. An unsubstantial injury as contrasted to a substantial injury is only a difference in degree, *i.e.,* the amount of damages. That is not a legal distinction. Both are injuries from which the victim is entitled to recover damages if the injury is the fault of another. . . . Therefore, we construe the phrase "substantial injury" in K.S.A. 60-513(b) to mean "actionable injury."'" *Moon v. City of Lawrence*, 267 Kan. 720, 727-28, 982 P.2d 388 (1999) (quoting *Roe v. Diefendorf*, 236 Kan. 218, 221-23, 689 P.2d 855 [1984]).

In general, "'a cause of action accrues, so as to start the running of the statute of limitations, as soon as the right to maintain a legal action arises. . . . [A]n action accrues [when] the plaintiff could first have filed and prosecuted his action to a successful conclusion.'" *Mashaney v. Board of Indigents' Defense Services*, 302 Kan. 625, 631, 355 P.3d 667 (2015) (quoting *Pancake House, Inc. v. Redmond*, 239 Kan. 83, 87, 716 P.2d 575 [1986]); see also *Garcia v. Ball*, 303 Kan. 560, 574, 363 P.3d 399 (2015) (criminal defendant's legal malpractice claim accrues when he, she exonerated, i.e., when defendant obtains postconviction relief); *Brueck v. Krings*, 230 Kan. 466, 470-71, 638 P.2d 904 (1982) (knowledge of fact of injury, not extent of injury triggers statute of limitations); *Kitchener v. Williams*, 171 Kan. 540, 236 P.2d 64 (1951) (statute of limitations ran from time of explosion of negligently installed heater, not from time of installation),

14

*superseded by statute as stated in Tomlinson v. Celotex Corp.*, 244 Kan. 474, 770 P.2d 825 (1989).

Based on the governing law reviewed above, there are two inquiries relevant to determining when the statute of limitations on the Falens' negligence claim began to run: (1) When did the Falens suffer an actionable injury—i.e., when were all the elements of the cause of action in place? and (2) When did the existence of that injury become reasonably ascertainable to them? The Court of Appeals' decision focused mainly on the first question, the district judge on the second. We disagree with the answers arrived at by each.

On the first question, the Falens immediately suffered more than a mere paper injury on January 18, 2008, when the deed for the Trust-to-Dean sale was filed and recorded. As of this date, at a minimum, a cloud on their title to the mineral interest arose. Equitable relief may be available when real property has been included in a deed by mistake and the parties never intended that it should be conveyed. *Schlatter v. Ibarra*, 218 Kan. 67, Syl. ¶¶ 2-3, 542 P.2d 710 (1975).

Moreover, an instrument may be reformed even though the parties did not carefully examine the document before executing it. 218 Kan. 67, Syl. ¶ 8. Mere negligence is not a bar to reformation when the ground for reformation is mutual mistake. 218 Kan. 67, Syl. ¶ 9. But the party seeking reformation of a deed must show the mistake and the prejudice that will result from failure to reform the instrument. See *Unified Gov't of Wyandotte Cty./Kansas City v. Trans World Transp. Servs., L.L.C.*, 43 Kan. App. 2d 487, 493, 227 P.3d 992 (2010) (When property included in deed because of mutual mistake, "the grantor is under no obligation to convey such property, and the grantee has no right to retain such property.").

15

The Falens suffered a substantial injury on January 18, 2008, because demonstrating the existence of a mutual mistake justifying reformation of a deed is bound to be a costly process. In addition, although there is ample evidence in this case that the 2008 deed's failure to reserve the mineral right was the product of the mutual mistake of the Trust and Dean, the Falens' ability to seek reformation faced a five-year deadline. See K.S.A. 60-511(5). Thus the Falens' substantial, actionable 2008 injury was compounded on January 18, 2013, when their equitable cause of action for reformation would no doubt face a statute of limitations problem of its own, possibly one that would sap its legal potency.

This brings us to the second question:  When did the existence of the 2008 substantial, actionable injury become reasonably ascertainable to the Trust or the Falens? This is the question on which the district judge concentrated.

As he noted, Kansas law requires that the Falens' negligence claim have been brought within two years unless the fact of injury was not reasonably ascertainable until sometime after the act causing the injury. K.S.A. 60-513(b). And, when disputed evidence exists about when an injury became reasonably ascertainable, the trier of fact makes the determination. See *Gilger*, 249 Kan. at 311.

Our recent decision in *Armstrong v. Bromley Quarry & Asphalt, Inc.*, 305 Kan. 16, 378 P.3d 1090 (2016), is instructive on the contours of the "reasonably ascertainable" standard. In that case, we examined when the statute of limitations began to run for plaintiff Willis L. Armstrong's trespass claim based on unauthorized subsurface mining. We noted:

> "Because the mining occurred below ground level, [the defendant quarry company's] intrusion upon the Armstrong property and theft of the rock would not have

16

been immediately apparent to Armstrong, without more. And under these facts, that something more must have been the house shaking that Armstrong discerned to be from blasting somewhere on the property and the suspicions of unauthorized mining based on previous business dealings with [the defendant]." 305 Kan. at 28.

In other words, the shaking was a trigger for further investigation. Once Armstrong felt it, we asked: "[W]hat, if anything, could Armstrong have done next to ascertain the fact of this injury?" The answer:

"[I]t is undisputed Willis [Armstrong] obtained maps from the regulatory agencies, some of which Bromley Quarry had prepared. Without exception, those maps incorrectly showed there had been no mining on the Armstrong property. The [Court of Appeals] noted that after inspecting these maps, Willis did not try to get 'his own survey or inspection of his property, he never had cores drilled, and did not ask any government agency for help during the time when his suspicions arose, although he did consider it.' But what would cause a reasonably prudent landowner to take this additional action under the circumstances—after reviewing maps on file with regulatory agencies that showed no mining had occurred on his or her property? The limited record here does not explain that, and neither the panel nor the district court delved further into this to consider how that might impact the statute of limitations analysis. And the panel arrived at its conclusion [that summary judgment was proper] even though there is nothing in the record that informs whether such activities would have been possible, practical, or effective. [Citation omitted.]" 305 Kan. at 29.

Because of our inability as an appellate court to do fact-finding on whether further followup was necessary for "reasonable" conduct on Armstrong's part and whether any of the other avenues for investigation alleged to be available would have disclosed the quarry company's wrongful conduct, we could not "conclude as a matter of law that any mining was reasonably ascertainable." 305 Kan. at 32. We therefore reversed the district court's summary judgment in favor of the quarry company based on the expiration of the statute of limitations.

17

In this case, RCAT has argued that the Trust and the Falens knew or should have known of their substantial injury in January 2008. Its actual notice argument is based on its assertions that it sent the 2008 deed to Gregory and Julie for review and signature and that they had it in their possession for two days before executing it and returning it to RCAT for filing and recording. But Gregory and Julie say the deed was sent to them simply for their signatures as co-trustees; they were not expected to and did not review it; further, they did not understand that its technical language failed to effect the intended mineral right reservation for the Trust. If Gregory and Julie signed the deed without reviewing and understanding it, as they insist, then they did not have actual notice of its content. This genuine issue of material fact prevented summary judgment on RCAT's actual notice theory.

Instead, the district judge relied on RCAT's "should have known" argument that substantial injury to the Trust and the Falens was reasonably ascertainable on January 18, 2008. RCAT persuaded the district judge that the constructive notice provision in K.S.A. 58-2222 was controlling. That statute provides:

> "Every . . . instrument [conveying real estate] in writing, certified and recorded . . . shall, from the time of filing the same with the register of deeds for record, impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed to purchase with notice."

Relying in part on *Black v. Black*, 64 Kan. 689, 68 P. 662 (1902), and *Hutto v. Knowlton*, 82 Kan. 445, 108 P. 825 (1910), RCAT argues that "[t]he rule in Kansas for over 100 years has been that the constructive notice imparted by [K.S.A. 58-2222] is sufficient for purposes of accrual of the statute of limitations." Although such a broad rule might be supported by reading *Black* alone, the later *Hutto* decision clarified that

18

constructive notice is imparted only to those who have a duty to investigate, a concept eventually echoed in our *Armstrong* decision:

> "Where a public record is required by law to be kept as a source of information respecting property rights and interests, a duty rests upon anyone to whom the information is material to improve with diligence the opportunity of learning that which the record discloses. It follows that, if the opportunity be neglected, the interested person will be bound to the same extent as if he had in fact examined the record. But the rule is no broader than its basis, and *if for any reason no obligation exists to consult the record, or if the interested person be circumvented from taking advantage of his opportunity, the rule does not obtain*." (Emphasis added.) *Hutto*, 82 Kan. at 448-49.

RCAT also relies on the Court of Appeals' more recent decision in *Bi-State Development,* 26 Kan. App. 2d 515.

In that case, defendant Shafer, Kline & Warren, Inc., prepared a real estate plat for a business park of plaintiff Bi-State Development Co., Inc. The plat showed an easement, and the plat was presented to, and approved by, the city's planning commission. Another version of the easement was executed by an agent of Bi-State and recorded. The discrepancy between the two versions of the easement went undiscovered until almost 10 years later, when a portion of the real estate was sold. Relying on caselaw charging a landowner with knowledge of zoning ordinances, the *Bi-State* panel concluded that the recording of the easement imparted constructive notice and started the running of the limitation period. 26 Kan. App. 2d at 516-17, 519.

The *Bi-State* panel did not discuss how or when Bi-State's duty to investigate the problem arose. 26 Kan. App. 2d at 515, 519. And unquestioning adherence to its holding would ignore the lesson from our *Hutto* and *Armstrong* decisions about the need for a trigger for further inquiry. See *Hutto*, 82 Kan. at 448-49; *Armstrong*, 305 Kan. at 28-29.

19

If we were to follow the *Bi-State* panel's lead in this case, we would equate constructive notice as a matter of law of the contents of a deed with a factual finding of reasonably ascertainable knowledge of a substantial, actionable injury from omission of a mineral interest reservation from that deed. We are unwilling to convert a question of fact into a question of law in this way.

In this case, the existence of a recorded deed that does not mention the reserved mineral interest specifically is one piece of relevant evidence among all the facts and circumstances to be considered by the district court fact-finder in answering the "reasonably ascertainable" question. Testimony from RCAT and from Gregory and Julie about their duties on receipt of the deed RCAT sent to them is additional relevant evidence. Certainly, as the Court of Appeals panel recognized, evidence of the Trust's and the Falens' continuing receipt of royalties and payment of taxes also will be relevant, particularly on the issue of whether the Trust's or the Falens' duty to investigate matters further should have been triggered under *Hutto* and *Armstrong*. The significance of the transfers among the Trust's beneficiaries after the 2008 sale also must be considered. In short, the constructive notice of K.S.A. 58-2222—which is about notice to the world, not to the parties to the real estate conveyance recorded via the instrument—tells only a part of a story still with two competitive sides. The statute is not, as a matter of law, outcome-determinative on what remains a question of fact.

For these reasons, we reverse the summary judgment granted RCAT by the district judge on the Falens' negligence claim. We do so for reasons other than those relied on by the Court of Appeals panel. The filing and recording of the 2008 deed did cause the Falens substantial, actionable injury, which means the injury occurred long before the royalty checks quit arriving. But, if the substantial injury was not, as a matter of fact, reasonably ascertainable by the Trust or the Falens before December 1, 2012, the

20

negligence claim is timely under K.S.A. 60-513(a)(4) and (b). We must remand to the district court for further proceedings.

*Breach of Fiduciary Duty*

The standard for reviewing summary judgment is the same for the Falens' fiduciary duty claim as it is for their negligence claim. The governing statute of limitations for a breach of fiduciary duty claim also is the same as that for a negligence claim. See K.S.A. 60-513(a)(4). The Trust and the Falens had two years to act on RCAT's alleged breach.

It appears that the district judge's summary judgment in favor of RCAT on the Falens' breach of fiduciary duty claim was based on a fundamental misunderstanding of the breadth of the allegations underlying it. It was not, as the judge apparently believed, based only on allegations about RCAT's behavior in 2008 but also on allegations about RCAT's behavior in 2014. As recited in the Falens' amended third-party petition, RCAT, in 2014,

> "failed to appropriately conduct the title search with respect to the Subject Real Property, failed to appropriately indicate the condition of title or any exceptions thereto in the initial Title Insurance Commitment and Policy, failed to note the interest of the Third Party Plaintiffs in the minerals in the Subject Real Property as would have been readily available through the records located in the Rice County Courthouse, and failed to detect and disclose Third Party Defendants' many previous mistakes in the closing of the Sammy Dean Contract.

> . . . .

". . . The services provided by the Third Party Defendant as to the Sammy Dean Contract and the LCL/SDM Contract were incompetently performed and this constituted a breach of the Third Party Defendant's fiduciary duties to Third Party Plaintiffs."

In other words, whatever breach of fiduciary duty may have begun in 2008 continued or was repeated, in the Falens' view, in 2014. Although any breach that occurred in 2014 may be successfully defensible on other grounds not argued before us today, it is simply not excusable from further litigation in this case because of the statute of limitations. The Falens moved to amend their third-party petition to add the breach of fiduciary duty claim on October 5, 2015; and the district judge treated the amended pleading as controlling. Its timing, regardless of whether the amended allegations and additional cause of action related back to the filing of the original third-party petition on December 1, 2014, mean the claim was brought well within the permitted two years following any 2014 breach. We therefore reverse the district judge's summary judgment in favor of RCAT on the Falens' breach of fiduciary duty claim. Again, we must remand this case to the district court for further proceedings.

CONCLUSION

We reverse the summary judgment granted in favor of RCAT in the district court and affirm the decision of the Court of Appeals. We remand this case to district court for further proceedings consistent with this opinion.